# Teamsters

## Heavy Highway Rental Agreement

## 2000 - 2003

Local Union No. 251

affiliated with
Teamsters Joint Council No. 10
and
The International Brotherhood of Teamsters

EXHIBIT
tabbies
1

Rental Agreement
2000 - 2003

Teamsters Local Union No. 251

affiliated with

Teamsters Joint Council No. 10

and

The International Brotherhood of Teamsters

This Agreement made as of the 1st day of May, 2000 by and between ______________________________ hereinafter designated as the "Employer" and Teamsters' Local Union No. 251, hereinafter designated as the"Union".

PREAMBLE

This Agreement is entered into to facilitate the adjustment of grievances and disputes between the Employer and Employees; to provide for the continuous employment of labor and to bring about stable conditions in the industry, and to establish necessary procedure for the amicable adjustment of disputes, including wages, hours and working conditions, which may arise between the Employer and Employees.

A notice in writing shall be given to the Local Union of any sale or transfer of the Employer's operation.

This Agreement shall be binding upon both parties, their heirs, successors, assigns and legal representatives, until terminated or amended as hereinafter provided.

For the purpose of preserving the level of benefits set forth in this Agreement, the Employer agrees to refrain from using the services of any person who does not observe at least the level of wages, hours and conditions of employment as established in this Agreement. This paragraph shall pertain only to sand, gravel, stone, asphalt, and ready mix concrete. It is understood by this Section that the parties hereto shall not use any leasing or subcontracting device to a third party to evade this Agreement.

ARTICLE I
TERRITORIAL JURISDICTION

This Agreement shall apply to and be effective within the jurisdiction of Local Union No. 251.

ARTICLE II
SCOPE OF EMPLOYMENT

(a) This Agreement shall apply to all highway and heavy construction performed by the Employer. For the purposes of this Agreement "Heavy and Highway Construction" shall include, but is not limited to, the construction of roads, streets, alleys, driveway, sidewalks, guard rails, fences, parkways, parking areas, airports, athletic fields, highway bridges, railroad bridges, railroad and street railway construction projects sewers, viaducts, shafts, tunnels, subways, track elevations, elevation highways, drainage projects, reclamation projects, water supply projects, water power developments, marine work, transmission lines, duct lines, pipe lines, docks, dams, dikes, levees, revetments, channels, channel cutoffs, intakes, dredging projects, jetties, breakwaters, harbors, industrial sites, and all earth moving.

(b) Operation of trucks of all descriptions, including but not limited to snow plows, dump trucks, semi-dump trucks, low boy trailers, winch trucks, A-frames, distributor trucks, tank trucks used for transporting any type of fuel, water or cement, agitator trucks, mixer trucks, portable truck or trailer, forklift trucks when used in job site, warehouse and storage areas, cement hoppers, euclids, dumpsters, turnarocker, ross carriers, or similar equipment or equipment designated to be used for the performance of the work performed by the use of any of the above equipment as well as the maintenance of such equipment presently served by employees covered by this Agreement.

(c) The terms of this Agreement shall apply to the transportation of all building and excavating materials and equipment including, but not limited to, stone, salt, lumber, doors, windows, structural steel, bricks, cement blocks, sand, materials, removed from roads, solid asphalt materials, shovels, cranes, bulldozers, compressors and hoisting engines, fuel, water, plowing and removal of snow when done with equipment covered by this Agreement.

(d) In the event that there shall be any dispute concerning jurisdiction regarding the assignment of work. between the Union and any other Union of the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers, the same shall be submitted for determination to the Construction Division of the Joint Council of the International.

(e) All work heretofore recognized as being within the jurisdiction of the Union shall continue to be the jurisdiction of the Union notwithstanding any inconsistent provisions contained in other agreements executed by this Association.

(f) If a jurisdictional dispute arises, the Union agrees that such dispute shall first be submitted to the local business agent of the Crafts involved for settlement, and if no understanding or agreement is reached within forty eight (48) hours, it will be referred to the International Unions involved for settlement. If no agreement is reached on this level in five (5) days, the patties to the dispute may extend the period for settlement to another fixed date, mutually agreed upon. Pending such settlement, the craft performing the work at the time the dispute arises will continue in such capacity until settlement is reached as above provided, it being agreed that there shall be no stoppage or abandonment of work in regard to any jurisdictional dispute. Existing international jurisdictional agreements shall be respected by both parties.

## ARTICLE III
## UNION MEMBERSHIP

(a) The Employer recognizes and acknowledges that the Union is the exclusive representative of all employees in the classifications of work covered by this Agreement. for the purpose of collective bargaining as provided by the Labor Management Relations Act of 1947 as amended. The Employer shall not enter into any Agreement or Contract with his Employees, individually or collectively, or with any officer, which in any way conflicts with the terms and provisions of this Agreement. Any such Agreement of Contract shall be null and void.

(b) All present Employees who are members of the Union on the effective day of this Agreement shall remain members of the Union in good standing as a condition of employment.

(c) All present Employees who are not members of the Union and all employees who are hired hereafter shall become and remain members in good standing of the Union as a condition of employment on or after the eighth day following the effective date of this Agreement, whichever is the later, except as otherwise provided for by law.

(d) A member in good standing is one who is not in arrears in the payment of his initiation fee and periodic dues to the Union. In accordance with the Constitution of the Union, Article X, Section 5(c) all members paying periodic dues to the Union must pay them on or before the last business day of the current month in advance. The Local Union shall notify the Employer when any employee is not in good standing.

(e) There shall be no discrimination against any workman by reason of race, creed, color. religion, sex, age or national origin.

ARTICLE IV
HOURS and OVERTIME

(a) The regular work day shall consist of eight (8) hours. Any employee required to work through his one-half hour lunch and receiving no lunch break that day shall be guaranteed 8 1/2 hours pay for that day. The half hour (1/2) lunch break shall commence between the fourth (4th) and fifth (5th) hour of work.

Employees are to be paid for all time worked from the yard or plant in traveling to any particular job site. Trucks parked on job sites - employees will be paid upon arriving at their scheduled time.

(b) The regular work week shall be forty (40) hours; eight (8) hours each day Monday through Friday. On Saturdays, drivers are to be guaranteed four (4) hours pay at the time and one half (1 1/2) rate and shall be paid the time and one half (1 1/2) rate for actual time worked over the four (4) hour minimum. On Sundays, drivers are to be guaranteed four (4) hours pay at the double time rate and shall be paid the double time rate for actual time worked over the four (4) hour minimum.

(c) All other hours worked except in the case of shifts as hereinafter provided shall be paid at the rate of time and one-half except that work performed on Sunday shall be paid at the rate of double time.

(d) Whenever more than one shift is employed, except as hereinafter provided, the straight time or regular rate of wages shall apply for each eight (8) hour shift, and work in excess of eight (8) consecutive hours on any shift shall be paid at the rate of time and one-half.

(e) Employees who report to work shall receive not less than eight (8) consecutive hours pay, except in the cases of inclement weather or mechanical failure that directly affects the driver involved where the employee will be guaranteed four (4) hours pay and eight (8) if he works after the fourth (4th) hour. Inclement weather shall be defined to mean raining, snowing, or extreme weather conditions where the prime contractor is not permitted to work the job site. An employee shall be paid from the time he leaves the garage or job site until the time he returns to the garage or job site.

ARTICLE V
HOLIDAYS

(a) Any regular employee on the Seniority list as defined in Article VII shall be paid a regular day's pay although he does not work for the following Legal Holidays, provided he has worked at least one (1) day in the calendar week in which the Holiday falls, and signifies his willingness to work the Holiday: or is on vacation during the week in which the Holiday falls and would have been working, but for the fact that he was on vacation. Provided further, no employer subject to this contract shall be required to allow more than one (1) employee, in accordance with seniority, to this vacation in any Holiday week.

New Years Day, Presidents' Day, Memorial Day, Independence Day, V-J Day, Labor Day, Columbus Day, Veteran's Day, Thanksgiving Day and Christmas Day.

If during the life of this agreement any of the current legal holidays should be deleted by law, the employees shall substitute another mutually agreeable day as their holiday.

(b) The calendar Week shall be Sunday to Saturday, both inclusive.

(c) When the employee is required to work on one of the above holidays, he shall be paid in addition to his holiday pay, two (2) times his straight time rate for all work that he may perform on that day, except that he shall be paid three (3) times his straight time rate for all hours worked over eight (8) hours.

(d) All other holidays shall be paid at the regular rates.

(e) The holiday pay shall not be by separate check.

## ARTICLE VI
## STEWARDS

(a) An employee of the Employer may be designated by the Union to act as Steward and he shall be the last employee to be laid off irrespective of seniority including Saturday and Sunday.

(b) No Steward shall have the authority to call a strike, cause a slowdown or take any other action which would interrupt the Employer's business, except as such action may be authorized by the Union. The Employer recognizes this limitation upon the authority of the Steward.

(c) Stewards can use the Company phone for union business at any time. The steward can process or investigate any dispute or grievance pertaining to company business during working hours without loss of pay.

(d) No employee shall be required to meet privately with Company officials relating to possible discharge without Union Representation present. If the Business Agent for Local No. 251 is unable to attend, or the Union Steward is absent from work, the employee shall have the right to select any union employee who is available to accompany him at any such meeting.

## ARTICLE VII
## SENIORITY

(a) Seniority rights for employees shall prevail. All new employees shall be hired on a sixty (60) days trial basis and shall work under the provisions of this Agreement, within which time they my be dismissed without protest by the Union. After working sixty (60) days in a calendar year, they shall be placed on the Seniority List as a regular employee in accordance with their date of hire.

(b) In the event of lay-off, the most junior employees shall be the first to be laid off, and rehiring shall be in the inverse order. The employer upon a request made by the Union shall furnish a seniority list of the employees covered by this Agreement.

(c) An employee who has been laid off shall be given at least seven (7) days to report to the job when he is called back to work, without loss of benefits or rights. In the event the employee fails to report within the time specified, he shall lose any benefits and rights he might have with the Employer and a new employee may be hired. The union shall furnish temporary drivers, if requested to do so, until the named employee shall report for work.

(d) If there are any breakdowns or shut downs during the day, a man whose vehicle is broken down, or whose operation is shut down, shall go home for the completion of the work day; however the Employer may assign him to perform other duties. When a vehicle shall be out of service for more than that day, seniority shall prevail on the following day.

(e) Seniority shall be broken by discharge, voluntary quit, failure to report after seven (7) days notice as herein provided, or by a lay-off for lack of work, for twenty-four (24) consecutive months.

(f) When the same Employer has more than one job in progress, working out of different garages or parking sites, and there is a lay-off of one or more men on any job and such lay-off exceeds one (1) working day, the employee shall at the expiration of one (1) day be entitled to transfer to another job of the Employer, if there are employees of less seniority working for the Employer on such other job.

Notwithstanding the foregoing, the Employer may permit a transfer immediately upon the lay-off without waiting one (1) day. An employee will have seniority preference to work within his own Local Union area provided he is qualified to operate the equipment available within the Local Union area.

## ARTICLE VIII
## TRANSFERS

When the Employer's equipment is moved from the jurisdiction of one local Union to the jurisdiction of another, the men employed shall be permitted to move the equipment.

## ARTICLE IX
## WAGES

(a) The straight time wages for employees covered by this Agreement shall be those set forth in Schedule "A", attached hereto.

## ARTICLE X
## DISCHARGE

(a) Any discharged employee may file a grievance no later than six (6) working days after discharge by a written notice submitted to the project manager or superintendent and the Local Union and such grievance shall be immediately processed in accordance with the steps of the grievance procedure.

(b) Any employee whose services have been terminated must be paid in full for all wages owed him by the Employer, including earned vacation pay, if any as soon as possible, in no event later than the end of the second (2nd) business day following discharge for just cause.

(c) No employee shall be dismissed without justifiable cause, and all discharges shall be in writing to the Local Union within two (2) days. Any written warning notices and/or suspension/discharge letters shall not remain in effect for a period of more than two (2) years from date of said notices/letters.

## ARTICLE XI
## UNION RIGHTS

(a) Authorized agents of the Union shall have access to the Employer's establishment during working hours, including the right to check trucks in transit, investigate working conditions and collect dues for the purpose of determining whether or not the terms of this Agreement are being complied with, and provided however, that it will not unreasonably interfere with normal operations.

Section 2: Lie Detector Test: The Company shall not require, request or suggest that an employee or applicant for employment take a polygraph or any other form of lie detector test.

## ARTICLE XII
## LABOR DISPUTES

It shall not be a violation of this Agreement, nor shall it be cause for discharge, if any employee refuses to cross a picket line or make pickups, deliveries or service anyone or perform work for anyone where a labor dispute exists.

## ARTICLE XIII
## HIRING OF TRUCKS

(a) The Employer agrees that he will hire equipment to supplement his own equipment only when he does not have the number or type of equipment required for his purpose; if it becomes necessary for the Employer to hire said additional equipment under circumstances above, preference must be given in hiring such equipment from employers who have a contract with Local Union 251 or an owner/operator who is a dues paying member, in good standing, of Teamsters Local Union No. 251.

(b) The Employer agrees that the wages, hours and working conditions provided for by this Agreement shall encompass the entire work covered by this agreement, thereby applying equally to any subcontracting let by the Employer on work covered by this Agreement. If any Employer shall subcontract work as herein defined, all employees

of said subcontractor shall be paid directly by the Prime Contractor, except when such subcontractor is signatory to an agreement with the Local Union or when it is mutually agreed between the Employer and the Local Union or any locals thereof, that the subcontractor may establish his own payroll. Employees of a subcontractor whether or not paid directly by a prime contractor shall not acquire seniority with the prime contractor.

(c) The term subcontract herein used shall include the hire of one or more trucks and shall also include delivery of bank run gravel and borrow to job sites.

(d) In the event equipment is hired, the Employer shall require that the trucks be manned by its own employees or by employees of an Employer who is a party to the Heavy and Highway Agreement with this Local Union covering such work.

(e) It shall be a violation of this Agreement for the signator to cause any trucker or person who pays lower wages, hours and working conditions that are provided for in this Agreement to haul sand, gravel, asphalt, stone, and ready mix concrete to or from a job site.

ARTICLE XIV
EQUIPMENT

(a) No employee shall be required to operate or work upon any vehicle that is not equipped with all safety appliances prescribed by law or which vehicle or its equipment is in defective condition. No employee shall be subject to disciplinary action for refusing to operate such equipment. Should the Employer, State and/or Federal Government require the use of any safety equipment wear or drug testing, it shall be provided without cost to the employees.

All equipment which is determined by the employer to be unsafe and not mechanically sound and proper shall be tagged so that it cannot be used by other drivers until the maintenance department has adjusted the complaint. After the equipment is repaired, the Employer shall place on such equipment an "OK" in a conspicuous place so the driver can see same.

Safety Equipment required by the employer and law shall be provided at no cost to the driver. Thereafter the driver will be responsible to keep and maintain the safety equipment in a responsible and prudent manner, considering normal wear and usage in the Industry.

(b) The employee shall report all defects of equipment to the Employer on such forms or in such manner as the Employer may require. The Employer shall take immediate steps to correct any defects in equipment reported by any employee. Employees shall not be held responsible for vehicles not properly equipped to comply with State Motor Vehicle Laws, and shall be compensated for fines and time lost if summoned to court, etc. because of same.

(c) The Employer shall not require as a condition of employment, that an employee purchase truck, tractor, or tractor and trailer, or other vehicular equipment.

ARTICLE XV
SEVERAL LIABILITY

(a) The obligation of each Employer member of the Association shall be several and not joint.

(b) In the event any Employer who is a party hereto shall withdraw from the Association, notice thereof shall be given by the Association to the Union at least thirty (30) days prior to such withdrawal. The terms of this Agreement shall be binding upon any Employer who withdraws from the Association.

ARTICLE XVI
INVALIDITY OF PROVISION

If any Article or Section of this contract or of any Riders thereto should be held invalid by operation of law or by any tribunal or competent jurisdiction of if compliance with or enforcement of any Article or Section should be

restrained by such tribunal pending a final determination as to its validity, the remainder of this and/or any rider thereto or the application of such Article or Section to person or circumstances other than those as to which it has been held invalid or as to which compliance with or enforcement has been restrained, shall not be affected thereby. In the event that any Article or Section is held invalid or enforcement of or compliance with which has been restrained as above set forth, the parties affected thereby shall enter into immediate collective bargaining negotiations upon the request of either party or both, for the purpose of arriving at a mutually satisfactory replacement for such Article or Section during the period of invalidity or restraint. If the parties do not agree on a mutually satisfactory replacement, either party or both shall refer the subject matter to Arbitration as provided for herein.

## ARTICLE XVII
## MISCELLANEOUS CONDITIONS

(a) Bereavement Clause: In the event of death in the immediate family of any employee in the bargaining unit, the Employee shall be permitted to be absent from work, from the date of death to the date of funeral, inclusive, and shall be paid for any scheduled working time lost by the affected Employee, up to a maximum of three (3) consecutive work days. Funeral leave shall not be hours worked for the purpose of computing overtime pay. Immediate family is defined as the mother, father, sister, brother, wife, husband, children, mother-in-law, or father-in-law of the employee. The Employer may request a death certificate as evidence of the death. Employees shall be paid one (1) day for the day of the funeral for grandparents and grandchildren.

(b) If, under the Employer's direction, the vehicle is overloaded and there is a resulting fine and suspension of license the Employer is liable for the fine and work opportunity lost.

(c) Physical Examination Clause: All examinations when required by law of regulatory body and performed under the Employer's direction shall be paid for by the Employer.

(d) New Equipment Re-Opening Clause: if an Employer puts into use any new type of equipment for which rates of pay are not established by this Agreement, the rates for such equipment shall be negotiated by the parties hereto. Increase in carrying capacity shall not be considered as a new type of equipment.

(e) There will be a ten (10) minute coffee break per shift.

(f) Injury on the Job: When a regular employee is injured on the job, he shall be guaranteed eight (8) hours pay for the day injured, provided he is instructed to cease work as a result of an injury, by the Employer or his physician.

(g) Paychecks shall be in an envelope.

(h) Intinuator trucks are to be manned at all times by Teamsters for all hours.

## ARTICLE XVIII
## ARBITRATION and GRIEVANCE PROCEDURE

(a) Grievance Procedure: All Grievances or disputes involving any controversy, dispute or misunderstanding arising as to the meaning, application or observance of any provisions of the Agreement shall be handled in the manner hereinafter set forth. It is agreed that all matters pertaining to the interpretation of this Agreement must be referred directly to the Rhode Island Heavy and Highway Construction Joint Committee provided that if a grievance has not been filed, the matter shall not be a subject of arbitration until a grievance is filed.

Step 1: All grievances must be made known in writing to the other party within seven (7) days after the reason for such grievance has occurred. The aggrieved employee's or employees' shop steward or another authorized representative of the Union shall first submit a written grievance to the job superintendent, or his duly authorized representative. The shop steward or another authorized representative of the Union of the employee or the employees involved shall be present at any meeting between the job superintendent and such employee or

employees. The job superintendent or his duly authorized representative must make a written disposition of the matter within twenty-four (24) hours after the submission of such written grievance thereto.

Step 2: If the disposition of the matter by the job superintendent or his duly authorized representative is not satisfactory, the matter must be taken up by the Business Agent, and representative of the Employer with authority to act, within forty-eight (48) hours of the written disposition set forth in Step 1, unless a reasonable time extension thereof is requested by either side.

Step 3: If the disposition of the matter in Step 2 is not satisfactory, either party has a right to file its grievances with the Joint Committee referred to in Section B of this Article within seventy-two (72) hours after Step 2.

(b) The Union and the several Employers who are signators to this shall together establish for the duration of this Agreement a Joint Committee to be known as the "Rhode Island Heavy and Highway Construction Joint Committee." All meetings of the Joint Committee must be attended by each member or his alternate, but the absence of any member or alternate shall not invalidate the action of the members of the Joint Committee who are present. The Joint Committee shall consist of two (2) representatives of the Employers, the Associations Secretary and a member of the Board of Construction Industries of Rhode Island who is a signator to this agreement, and two (2) representatives of the Union, its Business Representative and one other representative of his choice. The parties in the Joint Committee shall have equal power, regardless of the number on each side.

It shall be the function of the Joint Committee to settle disputes and grievances which cannot be settled in accordance with Steps 1, 2 and 3 of the grievance procedure. The committee shall meet the second Thursday of each month unless there are no request for arbitration pending. Both parties are entitled to no more than one postponement each, and a decision must be rendered in writing within 10 days of the Hearing.

A decision by a majority of the Joint Committee shall be final and binding on the parties and the employees involved. Failure of either party involved to comply with any final decision of or to submit to the jurisdiction of the Joint Committee shall give the other party the immediate right to all legal and economic recourse.

(c) Rights of the Joint Committee: The Rhode Island Heavy and Highway Construction Joint Committee shall have the right to investigate all facts pertaining to the dispute. The Joint Committee, as well as the Local Unions' business agents and/or stewards, shall, upon each dispute or grievance processed in accordance with this Article, have the right to examine time sheets and any other records pertaining to the computation of compensation of any individual or individuals whose pay is in dispute. Both parties shall be entitled to present such evidence and witnesses in support of their position as they see fit.

(d) Arbitration: If any grievance or dispute cannot be satisfactorily settled by a majority decision of the panel of the Joint Committee, within ten (10) days after disagreement, the matter shall be referred to the American Arbitration for a list of Arbitrators. The expense of the arbitrator selected or appointed shall be borne equally by the employer and the Union. In the event that the losing party fails to abide by the arbitrator's decision, or that either party refuses to submit to his jurisdiction, the other party shall have the right to immediately take all legal and economic recourse.

(e) The arbitrator shall not have the authority to amend or modify this Agreement or establish new terms or conditions under this Agreement. The arbitrator shall determine any question or arbitrability.

(f) Violations concerning wages, hours, Pension and Health and Welfare payments shall not be subject to the grievance procedure. In such cases, the Union shall give three (3) working days notice to the Employer that the Union will withdraw its men from the Employer's service. If the Employer contends there is a question of fact regarding the alleged violation, he may file a grievance within the aforesaid three (3) working days, with a copy to the Local Union and a copy to the Association. When a grievance has been filed, there shall be no work stoppage pending resolution of the grievance pursuant to A, Step 3 and the subsequent provisions of this Article.

(g) With regard to new equipment which is within the Teamster jurisdiction and with regard to equipment within Teamster jurisdiction and with regard to equipment within Teamster jurisdiction for which no wage rates appear herein, such wage rates shall be resolved pursuant to Article XX, Section A, Step 3 and the subsequent

provisions appearing thereafter in this Article. There shall be no dead-lining of equipment or work stoppage pending resolution of the question, and the agreed upon rates shall be retroactive.

(h) A grievance under Section C, Article XIV of this Agreement shall be processed directly and immediately with the Joint Committee.

(i) The administrative costs of the Joint Committee shall be borne equally by the Association and the Union. Non-association employers shall pay a service fee of One Hundred Dollars ($100.00) per dispute session to the Joint Committee, which fee shall be deposited in the Joint Committee Administrative Account subject to disbursement for committee business purposes by mutual agreement.

## ARTICLE XIX
## HEALTH SERVICES and INSURANCE PLAN

(a) Commencing with the 1st day of April, 2000 and for the duration of the current Collective Bargaining Agreement and any renewals or extensions thereof, the Employer agrees to make payments to the Teamsters' Local Union No. 251 Health Services and Insurance Plan for each and every employee performing work within the scope of and/or covered by this Collective Bargaining Agreement, whether such employee is a regular, probationary, temporary, or casual employer, irrespective of his status as a member or non-member of the Local Union from the first hour of employment subject to this Collective Bargaining Agreement as follows:

(b) Commencing with the 1st day of April, 2000, and until March 30, 2001, the Employer shall contribute to the Teamsters' Local Union No. 251 Health Services and Insurance Plan, the sum of four dollars and one and and one quarter ($4.01.25 ) cents per hour for each hour for which an employee receives pay, figured to the nearest quarter hour, up to a maximum of 40 hours but not more than $160.50 . An overtime hour shall be considered as a single contribution hour.

Commencing with the 1st day of April, 2001 and until March 30, 2002, the Employer shall contribute to the Teamsters' Local Union No. 251 Health Services and Insurance Plan, the sum of four dollars and twenty-six and one quarter ($4.26.25) cents per hour for each hour for which an employee receives pay, figured to the nearest quarter hour, up to a maximum of 40 hours but not more than $170.50. An overtime hour shall be considered as a single contribution hour.

Commencing with the 1st day of April, 2002, and until March 30, 2003, the Employer shall contribute to the Teamsters' Local Union No. 251 Health Services and Insurance Plan, the sum of four dollars and forty-six and one quarter ($4.46.25) per hour for each hour for which an employee receives pay, figured to the nearest quarter hour, up to a maximum of 40 hours but not more than $178.50. An overtime hour shall be considered as a single contribution hour.

Commencing with the 1st day of April, 2003, and until April 30, 2003, the Employer shall contribute to the Teamsters' Local Union No. 251 health Services and Insurance Plan, the sum of whatever is negotiated in the National Master Freight Agreement per hour for each hour for which an employee receives pay, figured to the nearest quarter hour, up to a maximum of 40 hours but not more than what is negotiated per week. An overtime hour shall be considered as a single contribution hour.

For purposes of this Article, each hour paid for or any portion thereof, figured to the nearest quarter hour, as well as hours of paid holidays and other hours for which pay is received by the employee shall be counted as hours for which contributions are payable.

If an employee is absent because of illness or off-the-job injury and notifies the Employer of such absence, the Employer shall continue to make the required contributions of forty (40) hours per week for a period of not more than four (4) weeks. If an employee is injured on the job, the Employer shall continue to pay the required contributions until such employee returns to work, provided however, such contributions shall be forty (40) hours per week and shall not be paid for a period of more than twelve (12) months.

Hourly contributions to the Health Services and Insurance Plan must be made for each hour worked on each regular or extra employee, even though such employee may work only part time under the provisions of this contract, including weeks where work is performed for the Employer but not under the provisions of this contract, and although contributions may be made for those weeks into some other Health Services and Insurance Plan.

All contributions shall be made at such time and in such manner as the Trustees require, and the Trustees shall have the authority to have an independent Certified Public Accountant audit the payroll and wage records of the Employer for the purpose of determining the accuracy of contributions to the Health Services and Insurance Plan.

If an Employer fails to make contributions to the Health Services and Insurance Plan within 72 hours after a notice of delinquency, the Local Union shall take whatever steps are necessary to secure compliance with this Article, any provisions of this Agreement to the contrary notwithstanding, and the Employer shall be liable for all costs for collecting the payments due together with attorneys' fees and such penalties which may be assessed by the Trustees. The Employer's liability for Payment hereunder shall not be subject to the Grievance Procedure or arbitration provided under this Agreement.

(c) The Employers and Union which are signator hereto ratify the designation of the Employer and the Employee Trustees under such Agreement, and ratify all action already taken, or to be taken by such Trustees within the scope of their authority.

## ARTICLE XX
## PENSION FUND

This Pension Article shall supersede and prevail over any other inconsistent provisions or articles contained within this agreement.

(a) Commencing with the 1st day of May, 2000, and for the duration of the current Collective Bargaining Agreement between Local Union No. 251 and the Employer, and any renewals or extension thereof, the Employer agrees to make payments to the New England Teamsters and Trucking Industry Pension Fund for each and every employee performing work within the scope of and/or covered by this Collective Bargaining Agreement, whether such employee is a regular, probationary, temporary or casual employee, irrespective of his status as a member or nonmember of the Local Union, from the first hour of employment subject to this Collective Bargaining Agreement as follows:

Commencing on the 1st day of May, 2000, for each hour or portion thereof, figured to the nearest quarter hour for which an employee receives pay or for which pay is due, up to a maximum of 2080 hours for each calendar year, the Employer shall make a contribution of three dollars and ninety-one ($3.91) cents per hour for all hours to the New England Teamsters and Trucking Industry Pension Fund and overtime hours shall be considered as single contribution hours..

Commencing on the 1st day of May, 2001, for each hour or portion thereof, figured to the nearest quarter hour for which an employee receives pay or for which pay is due, up to a maximum of 2080 hours for each calendar year, the Employer shall make a contribution of four dollars and six ($4.06) cents per hour for all hours to the New England Teamsters and Trucking Industry Pension Fund and overtime hours shall be considered as single contribution hours.

Commencing on the 1st day of May, 2002, for each hour or portion thereof, figured to the nearest quarter hour for which an employee receives pay or for which pay is due, up to a maximum of 2080 hours for each calendar year, the Employer shall make a contribution of four dollars and twenty-one ($4.21) cents per hour for all hours to the New England Teamsters and Trucking Industry Pension Fund and overtime hours shall be considered as single contribution hours.

For purposes of this section, each hour for which wages are paid or due, or and portion thereof, figured to the nearest quarter hour, as well as hours of paid vacation, paid holidays and other hours for which pay is due or received by the employee, shall be counted as hours for which contributions are payable. In computing the maximum amount due any week, there shall be no daily limit on the number of hours for any one day in such week

whether such hours are performed on straight time or overtime rates, but payments shall be made at the amount set forth above.

If an employee as defined in section (a) is absent because of illness or off-the-job injury and notifies the Employer of such absence, the Employer shall continue to make the required contributions of forty (40) hours per week for a period of not more than four (4) weeks. If an employee is injured on the job, the Employer shall continue to pay the required contributions until such employee returns to work, provided, however, such contributions shall be forty (40) hours per week and. shall not be paid for a period of more than twelve (12) months.

(b) The Employer agrees to and has executed a copy of the New England Teamsters and Trucking Industry Pension Fund Agreement and Declaration of Trust dated April 11, 1958, and accepts such Agreement and Declaration of Trust, as amended, and ratifies the selection of the Employer Trustees now or hereafter serving as such, and all action heretofore or hereafter taken by them within the scope of their authority under such Agreement and Declaration of Trust.

(c) The parties agree that the Pension Plan adopted by the Trustees of the New England Teamsters and Trucking industry Pension Fund shall at all times conform to the requirements of the Internal Revenue Code so as to enable the Employer at all times to treat its contributions made to the Fund as a deduction for income tax purposes.

(d) It is also agreed that all contributions shall be made at such time and in such manner as the Trustees shall reasonably require; and the Trustees shall have the authority to have an audit of the Payroll and wage records of the Employer for all employees performing work within the scope of and/or covered by this Collective Bargaining Agreement for the purpose of determining the accuracy of contributions to the Pension Fund and adherence to the requirements of this section of the Collective Bargaining Agreement regarding coverage and contributions, such audit may, at the option of the Trustees, be conducted by an independent certified Public accountant or a certified public accountant employed by the New England Teamsters and Trucking Industry Pension Fund.

If the Employer shall fail to make contributions to the Pension Fund by the twentieth (20th) day of the month following the month during which the employees performed work or received pay or were due pay within the scope of this Collective Bargaining Agreement, up to and including the last completed payroll Period in the month for which contributions must be paid, or if the Employer having been notified that its contributions to the Fund have been under reported and/or underpaid, fails within twenty (20) days after such notification to make any required self-audit and/or contributions found to be due, the Local Union shall have the right after an appropriate seventy-two (72) hours notice to the Employer, to take whatever steps it deems necessary to secure compliance with this Agreement, any provision of this Collective Bargaining Agreement to the contrary notwithstanding, and the Employer shall be responsible to the employees for losses resulting therefrom. Also, the Employer shall be liable to the Trustees for all costs of collecting the payments due together with attorneys' fees and such interest, liquidated damages or penalties which the Trustees may assess or establish in their discretion. The Employer's liability for payment hereunder shall not be subject to the Grievance Procedure and/or Arbitration if such is provided in this Agreement.

It is understood and agreed that once a payment or payments are referred to an attorney or collection by the Trustees of the New England Teamsters and Trucking Industry Pension Fund and/or the Local Union, the Local Union and its business agents or chief executive officer shall have no right to modify, reduce or forgive the Employer with respect to its liability for unpaid contributions, interest, liquidated damages or penalty as may be established or assessed by the Trustees in their discretion against delinquent Employers.

(e) No oral or written modification of this section regarding pensions and retirement shall be made by the Local Union or the Employer, and, if made, such modification shall not be binding upon the employees performing work within the scope of this Collective Bargaining Agreement and covered by this section or upon the Trustees of the New England Teamsters and Trucking Industry Pension Fund.

## ARTICLE XXI
## UNIFIED TRUST FUND

It is hereby agreed that parties signator to this Agreement shall pay to the Trustees of the Labor Management

Unified Trust Fund the following contributions per hour for the total gross hourly wage paid to each employee weekly by said Employer. Such monies shall be paid to the Trustees no later than the twentieth (20th) of the month for which the contribution is being made; however, in the case of operations of less than a month's duration, payments shall be due weekly.

If the Employer shall fail to make contributions to the Unified Trust Fund by the twentieth (20th) day of the month following the month during which the employees performed work or received pay or were due pay within the scope of this Collective Bargaining Agreement, up to and including the last completed payroll Period in the month for which contributions must be paid, or if the Employer having been notified that its contributions to the Fund have been under reported and/or underpaid, fails within twenty (20) days after such notification to make any required self-audit and/or contributions found to be due, the Local Union shall have the right after an appropriate seventy-two (72) hours notice to the Employer, to take whatever steps it deems necessary to secure compliance with this Agreement, any provision of this Collective Bargaining Agreement to the contrary notwithstanding, and the Employer shall be responsible to the employees for losses resulting therefrom. Also, the Employer shall be liable to the Trustees for all costs of collecting the payments due together with attorneys' fees and such interest, liquidated damages or penalties which the Trustees may assess or establish in their discretion. The Employer's liability for payment hereunder shall not be subject to the Grievance Procedure and/or Arbitration if such is provided in this Agreement.

The contribution shall be:

Effective May 1, 2000, the contribution rate shall be .50 cents per hour for all hours.

## ARTICLE XXII
## INDUSTRY ADVANCEMENT PROGRAM

Section 1: The Employer hereby agrees to enter into the terms of this Agreement, by virtue of the execution hereof by himself or an association having his authorization therefor shall contribute fifteen (15) cents for each hour worked by an employee under the terms of this Agreement to a fund known as "Construction Industries of Rhode Island Industry Advancement Fund". The Fund shall be administered by a Board of Trustees, not more than five (5) in number, all appointed by the Construction Industries of Rhode Island, Inc. Contributions to the Fund shall be deductible by the Employers as an ordinary business expense and the contributions to the Fund and the earnings thereon shall be exempt from taxation as contributions to a tax exempt organization under Internal Revenue Code Section 501 (c) (6).

Section 2: The Fund shall be under the exclusive Management of such Trustees who shall operate the Fund under the terms of a Trust and Plan executed by the Construction Industries of Rhode Island, Inc. and the Trustees.

Section 3: The Trust Fund shall be used for the following purpose: The promotion of safety and accident prevention in the construction industry; conducting or promoting educational programs such as schools or superintendents of construction and other supervisory and management personnel; paying the cost of standardizing contracts and specifications; setting up machinery to bring about cooperation among owners, architects, engineers, contractors, subcontractors, material suppliers, surety and insurance interests, public agencies, and other construction industry groups and organizations to eliminate disputes and disagreements; conducting or sponsoring research into new methods and new materials for use in the construction industry; paying the expenses involved in conducting public relations and market development programs for the benefit of contractors engaged in the construction industry in Rhode Island; paying the expenses attendance to the promotion of stability of relations between labor and management; paying the expenses incurred by management in connection with collective bargaining on an industry-wide basis for the benefit of the construction contractors engaged in construction in Rhode Island; paying the expenses required to develop and maintain facilities for arbitration of disputes and the adjustment of grievances; conducting or promoting programs to insure a sufficiency of skilled employees in all crafts for construction contractors in Rhode Island; Providing contributors with information and data relating to the construction industry in the matters mentioned herein; paying the costs of administration of the Fund; paying the expenses incurred in the collection of contributions for the Fund; and such other industry-wide endeavors of like character or kind as may be desirable from time to time as the Trustees shall decide.

Section 4: The Trust Fund shall not be used by the Trustees for any of the following purposes which are expressly prohibited uses or purposes:

(a) Lobbying in support of anti-union legislation supporting litigation before a court or any administrative body against any union or any of its agents.

(b) Subsidizing the business operation of Employers during a period or periods of work stoppages or strikes.

Section 5: The amounts payable by an Employer under this Article shall be paid into said Fund as directed by the Trustees. All monthly checks will be a separate check and shall be forwarded to the Teamsters Local 251 Health Services and Insurance Fund office at the same time the company remits their regular monthly Health services remittance check.

Section 6: Employers who are adjudged delinquent by the Fund Trustees in their payments to the Fund shall be subject to the remedies available for delinquency as in other Trust herein. The Local Union, after written notification from the Association will send the appropriate seventy-two (72) hour notice and take whatever steps it deems necessary to secure compliance, any provisions of this agreement to the contrary notwithstanding.

## ARTICLE XXIII
## TEAMSTERS' LOCAL 251 TRAINING FUND

It is hereby agreed that the Employer shall pay to the Teamsters' Local 251 Training Fund the following contribution per hour for the total gross hourly wage paid to each employee weekly by said Employer. Such monies shall be paid no later than the twentieth (20th) of the month for which the contribution is being made; however, in the case of operations of less than a month's duration, payments shall be due weekly.

The contribution shall be .10 cents per hour for all hours:

If an Employer fails to make contributions to the Fund within 72 hours after a notice of delinquency, the Local Union shall take whatever steps are necessary to secure compliance with this Article, any provisions of this Agreement to the contrary notwithstanding, and the Employer shall be liable for all costs for collecting the payments due together with attorneys' fees and such penalties which may be assessed. The Employer's liability for payment hereunder shall not be subject to the Grievance Procedure or arbitration provided under this Agreement.

## ARTICLE XXIV
## DRIVE DEDUCTION

The Employer agrees to deduct from the paycheck of all employees covered by this Agreement voluntary contributions to DRIVE. DRIVE shall notify the Employer of the amounts designated by each contributing employee that are to be deducted from his/her paycheck on a weekly basis for all weeks worked. The phrase "weeks worked" excludes any week other than a week in which the employee earned a wage. The Employer shall transmit to DRIVE National Headquarters on a monthly basis, in one check the total amount deducted along with the name of each employee on whose behalf a deduction is made, the employee's Social Security number and the amount deducted from the employee's paycheck.

## ARTICLE XXV
## RETROACTIVE

All retroactive wages and fringe benefits must be paid within thirty (30) days of the signing of this Agreement.

ARTICLE XXVI
TERMINATION

This Agreement shall take effect on May 1, 2000 and shall continue in full force and effect until April 30, 2003, and shall then renew itself from year to year unless either party to the agreement gives written notice to the other party at least sixty (60) days prior to the expiration of this Agreement of a desire to change or amend this Agreement.

Tunnel rates for trucks actually going underground - add forty (40) cents per hour to rate according to equipment. On equipment used to haul power - add twenty-five (25) cents above rate according to axle.

IN WITNESS WHEREOF, the parties hereto have caused these presents to be signed by their duly authorized representatives and have affixed hereto the seals of their respective organizations the day and year first written above.

**FOR THE COMPANY:**

______________________________
Company Name (Please Print)

______________________________
Street

______________________________
City, State, Zip

______________________________
Telephone number

______________________________
Signature

**FOR THE UNION:**

Teamsters Local Union No. 251

______________________________
Joseph Boyajian, Vice President & Business Agent

c: hhwrent.wpd

SCHEDULE "A"

| FROM: TO: | 5/1/00 4/30/01 | 5/1/01 4/30/02 | 5/1/02 4/30/03 |
|---|---|---|---|
| Pick-up trucks, station wagons and panel trucks | $18.81 | $19.81 | $20.51 |
| Two axle, helpers on low beds, etc. | $18.96 | $19.96 | $20.66 |
| Two axle dump truck | $19.01 | $20.01 | $20.71 |
| Three axle dump truck | $19.06 | $20.06 | $20.76 |
| Four and Five Axle | $19.16 | $20.16 | $20.86 |
| Tractor-Trailers | $19.31 | $20.31 | $21.01 |
| Low Bed Trailers/Boom Trailers | $19.56 | $20.56 | $21.16 |
| Special Earth Moving equipment under 35 tons | $19.26 | $20.26 | $20.96 |
| Special Earth Moving 35 tons or over | $19.51 | $20.51 | $21.21 |
| Trailers when used on a double hook-up (pulling 2 trailers) | $19.76 | $20.76 | $21.46 |

IN WITNESS WHEREOF, the parties hereto have caused these presents to be signed by their duly authorized representatives and have affixed hereto the seals of their respective organizations the day and year first written above.

**FOR THE COMPANY:**

PATRIOT RECYCLING & PROCESSING Co., INC.
Company Name (Please Print)

2208 PLAINFIELD PIKE
Street

JOHNSTON, RI 02919
City, State, Zip

401-943-7100
Telephone number

D. Romano
Signature

**FOR THE UNION:**

Teamsters Local Union No. 251

Joseph Bairos
Joseph Bairos, President & Business Agent

c: hhwrent.wpd

Date: 9-25-03

Name of Company

PATRIOT Recycling + Processing Co, Inc.

Name of Office Office

Address

2208 PlAINFIELD PIKE
JOHNSTON, RI 02919

Phone No.

401-943-7100

* please sign

Romano